UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE DeJESUS GONZALEZ,

           Petitioner,

     v.

JOE A. LIZARRAGA,

           Respondent.

No. 2:15-cv-1961 WBS GGH P

FINDINGS AND RECOMMENDATIONS

*Introduction and Summary*

       Petitioner is a state prisoner represented by counsel proceeding with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on November 4, 2011, in the Sacramento County Superior Court on charges of first degree murder (Cal. Penal Code §187(a)) (later reduced to second degree murder) with enhancements for gang participation (id., § 186.22(b)(1)) and use of a firearm (id., § 12022.53(e)). He seeks federal habeas relief on the following grounds: insufficient evidence to support a finding of murder, an ineffective assistance of appellate counsel claim for failing to raise the insufficiency of evidence such that it could be reviewed on its merits, and a jury information due process issue. By order of May 16, 2016, the undersigned directed the parties to file further briefing on issues raised by the petition. Respondent filed timely briefing, and after an order to show cause was issued, petitioner filed a statement waiving further argument on the

1

1   issues raised by the court.

2       Among other issues not germane to this federal habeas petition, an insufficiency of evidence

3   issue was raised on direct appeal, i.e., the facts were insufficient to support a murder conviction

4   when analyzed with the elements of first or second degree murder.  As discussed fully below,

5   petitioner was prosecuted on three distinct theories:

6       1.  He was the actual shooter;

7       2.  He aided and abetted a murder;

8       3.  He aided and abetted a fight which led to the natural and foreseeable consequence of

9           murder.

10  The jury returned a unanimous verdict of murder, but no specification was given as to what

11  theory(s) were found to be true.

12      In the direct appeal, petitioner asserted only that the evidence was insufficient as to

13  theories 2 and 3.  Under California law, the jury was not required to be unanimous as to the

14  theory(s) of conviction.  The Court of Appeal determined that petitioner had conceded liability on

15  theory 1, and it never actually adjudicated the evidence sufficiency on theories 2 and 3—it

16  essentially held that "even if" the evidence was insufficient for theories 2 and 3, the conviction

17  still remained valid because liability on theory 1 was undisputed.

18      Petitioner's appellate concession dooms his petition herein whether one views his

19  concession on direct review as a waiver/default, or merely a means by which the merits of

20  insufficiency were adjudicated.  The more colorable issue of ineffective assistance of counsel has

21  not been properly raised in this federal petition, and it is also unexhausted.  Upon careful

22  consideration of these filings, the record, and the applicable law, the undersigned recommends

23  that petitioner's application for habeas corpus relief be denied.

24  I.  BACKGROUND

25      In its unpublished memorandum and opinion addressing petitioner's judgment of

26  conviction on appeal, the California Court of Appeal for the Third Appellate District found that

27  the jury instructions were erroneous in failing to permit the jury to consider second degree murder

28  under the natural and probable consequences doctrine in regard to petitioner (and one co-

defendant), and reversed petitioner's conviction, instructing the People to either retry him or accept reduction of the conviction to second degree murder.  People v. Torres, 2014 WL 617671 (Feb. 18, 2014).  According to petitioner, the People agreed to accept a reduction of the conviction to second degree murder.[1]  (Pet'n, ECF No. 2 at 9.)[2]  The Court of Appeal provided the following factual summary:

> For our purposes, the evidence need not be recited in detail. Suffice it to say that in May 2008 Guerrero and his family, which included his wife, Celica, and two stepsons who were Sureño gang members, were living at a house on Lindley Drive. They had lived there for seven years.

> On Memorial Day, Guerrero was with some other family members in the garage and driveway area of his house when a group of young men walked up, including one wearing a red bandana across his face. That was Jaime, who is a Norteño gang member. Also in the group was Jose, who is also a Norteño gang member.

> Jaime challenged Guerrero's stepsons to come out and fight. Guerrero said he was going to call the police and pulled out his cell phone. A physical struggle between Jaime and Guerrero ensued. At some point, Jaime pulled out a gun. According to Guerrero's stepdaughter, Veronica, Guerrero was able to grab the gun and throw it away, but he threw it in the direction of the group that Jaime came with. Another witness testified that Guerrero "somehow hit the gun ... out of [Jaime's] hand, and it flew towards where the group was." Guerrero's widow testified that it was Jaime who "threw [the gun] to where the others were at."

> Another member of the group of young men picked up the gun and told Guerrero to let go of Jaime. When he did not do so, the man fired a shot, hitting a nearby van. The man then stepped closer and shot Guerrero in the head.

> The People charged seven individuals, including Jaime, Jose, and Sergio, with Guerrero's murder. In May 2011, Sergio pled no contest to the lesser included offense of voluntary manslaughter in exchange for a middle-term sentence of six years in prison. In late August 2011, Jaime and Jose (along with another defendant who was ultimately acquitted) went to trial. At trial, Jose testified that he followed the group of young men down Lindley toward Guerrero's house but claimed he never got closer than "one house over."

---

[1]  Petitioner cites to the California Court of Appeals' opinion for this statement; however, this opinion remanded for the state to decide how it wanted to proceed.  Torres, 2014 WL 617671 (Cal. Ct. App. Feb. 18, 2014).

[2]  The court also remanded for new restitution hearings, finding insufficient evidence to support the award.

3

The prosecutor argued there was "high confidence that the gunman, the actual killer was [Jose]" and that the shooter committed first degree murder. The prosecutor further argued that to the extent they did not pull the trigger, the defendants were guilty of the murder either because they aided and abetted the murder or because they committed or aided and abetted the crime of fighting or challenging to fight and the murder was a natural and probable consequence of that crime.

The jury found both Jaime and Jose guilty of first degree murder and found true two sentence enhancement allegations (gang and firearm). Jose moved to set aside the verdict against him and for a judgment of dismissal on the ground that the prosecutor interfered with his ability to call a witness, Shawn Siona, who would have corroborated Jose's testimony. The trial court denied that motion.

The court ordered Sergio to pay Guerrero's widow $4,500 in victim restitution. The court later ordered Jaime and Jose to each pay $11,500 in victim restitution to Guerrero's widow.

Sergio, Jaime, and Jose each filed timely notices of appeal.

People v. Torres, No. C069510, 2014 WL 617671, at *1-2 (Cal. Ct. App. Feb. 18, 2014), review denied (June 18, 2014).

II. ANALYSIS

    A. AEDPA and Insufficient Evidence Standards

The AEDPA and insufficient evidence legal standards have only limited applicability here due to the unique procedural status of this case. However, for the sake of completeness, the standards are set forth in Appendix A to these Findings.

    B. Insufficient Evidence

Petitioner claims here that the evidence was insufficient in three respects: (1) to prove beyond a reasonable doubt that petitioner was the shooter; (2) to prove that petitioner intended to aid and abet the shooting of Guerrero; and (3) no rational jury could infer from the evidence presented at trial that murder was a reasonably foreseeable consequence of a street fight.

The California Court of Appeal rejected this claim, finding that the "shooter theory" had been conceded, and relied upon this concession in addressing the remaining two of the three theories of liability:

////

////

4

A

*Liability As An Aider And Abettor*

Jose contends the evidence was insufficient to support his conviction of murder on the theory that he aided and abetted either the crime of fighting or challenging to fight or the crime of murder because "gang membership, plus presence" is not sufficient to establish aiding and abetting liability. This argument lacks merit, however, because Jose himself admits that under the jury instructions in this case, the prosecution offered *three* different theories of his guilt: "The first theory was that Jose personally shot Mr. Guerrero.... The second theory was that Jose had been a direct aider and abettor of premeditated murder.... The third theory ... was that Jose had aided and abetted violation of Penal Code section 415 (fighting or challenging to fight) and that premeditated murder had been a natural and probable consequence of that offense."

Jose's challenge to the sufficiency of the evidence addresses only *two* of the three theories of liability for the murder offered against him, i.e., that he was guilty as an aider and abettor for aiding and abetting either the crime of murder or the crime of fighting or challenging to fight (of which the murder was a natural and probable consequence). **Jose does *not* challenge the sufficiency of the evidence to support his conviction on the third theory** [labeled as number 1 herein]—**that he was the shooter. Under these circumstances, reversal is not required absent an affirmative indication in the record that the verdict actually rested on a theory that was not supported by substantial evidence. (See** <u>People v. Guiton</u> **(1993) 4 Cal.4th 1116, 1129.) Because Jose points to nothing in the record to show that the jury's verdict rested on the theory that he acted as an aider and abettor—as opposed to the theory that he was the shooter—his challenge to the sufficiency of the evidence is without merit.**

\*\*\*

B

*The Murder As A Reasonably Foreseeable Consequence Of The Street Fight*

Joined by Jose, Jaime contends the evidence was insufficient to support his conviction of murder based on the natural and probable consequences doctrine because of the "unusual and unexpected intervening circumstance ... that Guerrero himself took [the] firearm [Jaime] had been using only as a bludgeon, and threw it toward a crowd of Norte[ñ]os, one of whom picked up that gun and murdered Guerrero." We disagree.

Jaime acknowledges that he could be held liable for Guerrero's murder as long as it was a "natural and probable" consequence of the fight he instigated with Guerrero. Under California law, " '[a] "natural" consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened.'" (*People v. Leon* (2008) 161 Cal.App.4th

5

149, 158.) Jaime contends that Guerrero's act of "grab[bing the] gun" from Jaime and "toss[ing] it toward th[e] shooter" was not foreseeable and thus constituted "an unusual and unexpected intervening circumstance" that precluded his conviction for murder.

We first note that the factual predicate Jaime offers in support of his argument is inconsistent with the applicable standard of review. Jaime asserts that "Guerrero was able to grab the gun and throw it away, but he threw it in the direction of the group" that Jaime came with. In support of this factual assertion, Jaime cites the testimony of Guerrero's stepdaughter, Veronica. As we have noted, however, another witness testified that Guerrero "somehow hit the gun ... out of [Jaime's] hand, and it flew toward where the group was." When asked if it looked like Guerrero "just knocked the gun away or actually was able to grab the gun away and then throw it," the witness confirmed that Guerrero "[k]nock[ed the gun] out of [Jaime's] hand." And Guerrero's widow testified that it was Jaime who "threw [the gun] to where the others were at."

Jaime admits that the substantial evidence standard of review applies to this argument and that under that standard of review we "must review the whole record in the light most favorable to the judgment below." (*People v. Johnson* (1980) 26 Cal.3d 557, 562.) In making his argument, however, he defies the standard of review and chooses the testimony that best suits his purposes, not the testimony that is most favorable to the judgment and, in particular, to the conclusion that the murder was the natural and probable consequence of the fight Jaime started.

As our Supreme Court noted in *People v. Medina* (2009) 46 Cal.4th 913, under the natural and probable consequences doctrine "[t]he precise consequence need not have been foreseen." (*Id.* at p. 927.) Instead, "'"it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.'"'" (*People v. Cervantes* (2001) 26 Cal.4th 860, 871.) "To break the chain of causation, the intervening act must be an " ' " 'unforeseeable ... extraordinary and abnormal occurrence.'"'"[FN. 2] (*People v. Fiu* (2008) 165 Cal.App.4th 360, 371–372.)

[FN. 2.]   The foregoing principles are general principles of proximate causation. That these principles govern in determining what constitutes a natural and probable consequence for purposes of the natural and probable consequences doctrine is evidenced by the Supreme Court's cite to *People v. Schmies* (1996) 44 Cal.App.4th 38, 50 in *Medina*. (See *People v. Medina*, supra, 46 Cal.4th at p. 927.) In the parenthetical attached to its cite to *Schmies*, the Supreme Court specifically noted that *Schmies* was relevant because of its discussion of "proximate cause principles." (*Medina*, at p. 927.)

On the evidence here, there was nothing extraordinary or abnormal about either: (1) Guerrero knocking the gun out of Jaime's hand, with it ending up near Jaime's companions; or (2) Jaime himself throwing the gun toward his companions. Neither of these scenarios constituted "an unusual and unexpected intervening circumstance."

> Thus, there was substantial evidence for the jury to reasonably find that Jaime was liable for the first degree murder of Guerrero under the natural and probable consequences doctrine.
>
> As for Jose's joinder in this argument, we again note that the prosecution proceeded against Jose on multiple theories of liability for Guerrero's murder. **Even if we were to find that, as to Jose, there was insufficient evidence to find that first degree murder was a natural and probable consequence of the fight he aided and abetted (because, for example, there was no evidence Jose was aware Jaime had a gun before Jaime brought it out during the fight), we could reverse Jose's conviction only upon a showing to a reasonable probability, based on the record, that the jury found him guilty on this theory, as opposed to the theory that he was the actual shooter.** (See *People v. Guiton*, *supra*, 4 Cal.4th at pp. 1129–1130.) Jose has not made any such showing. Accordingly, this claim of evidentiary insufficiency is of no avail to Jose either.

People v. Torres, 2014 WL 617671, at *2-4. (bold added)

As the undersigned stated in the order for further briefing, and several times herein, three theories were presented at trial concerning petitioner's involvement in the crime at issue:  1- he was the actual shooter; 2-he aided and abetted the shooting of the victim by another; 3-the murder was a natural and foreseeable result of a fight which petitioner aided and abetted.  Petitioner was convicted of murder, but the jury did not provide a finding of what theory(s) prompted its verdict.[3]

Importantly, on appeal, petitioner's appellate counsel did not contest the sufficiency of the evidence with respect to petitioner being the actual shooter, but only contested the latter two theories.  The purpose of this court's further briefing order, in part, was to question the parties as to the meaning of the Court of Appeal's decision.  This court's order stated:

> The Court of Appeal never actually reviewed the merits of the alleged insufficiency grounds raised by petitioner because it simply relied on the fact that petitioner had not challenged sufficiency of the evidence on theory one - petitioner was the actual shooter. Since

---

[3]  The prosecution had argued in closing that petitioner was the shooter, (RT. 1487, 1488), and also argued the other two theories of liability.  See RT. 1479-82, 1485, 1498-99, 1503 (aiding and abetting a fight where premeditated murder was natural and probable consequence), and RT. 1489, 1491, 1494 (aiding and abetting a premeditated murder based on knowledge that co-defendant had a gun).  The prosecutor also pointed out that it did not matter under which theory the jury chose to convict, as long as there was enough evidence under one of the theories.  (RT. 1497).

sufficiency of the evidence was a given on theory one, the Court of Appeal found that whether the evidence was *actually* sufficient on theories 2 and 3 was inconsequential as to petitioner.  It further ruled that the jury was not required to have specified the theory of conviction in its verdict.[4]

Although the Court of Appeal did not use the term, for all intents and purposes, it found that petitioner had waived his right to contest sufficiency of the evidence.  No analysis of petitioner's sufficiency arguments *on their merits* had to be made because petitioner had not challenged the sufficiency on theory one. Seemingly, by any reasonable interpretation of the Court of Appeal decision, petitioner had waived the issue.[5]

Petitioner recognizes the AEDPA context of the petition, i.e., the Court of Appeal ruling must be upheld unless it was AEDPA unreasonable, but he argues the facts concerning insufficiency—something the Court of Appeal never adjudicated. In essence, petitioner seeks this court to perform a *de novo* review. Respondent, on the other hand, simply relies on petitioner's waiver of the ability to contest sufficiency of the evidence, and essentially argues the waiver finding by the Court of Appeal to be a ruling on the merits, a *procedural* ruling which should be given AEDPA deference.

(ECF No. 16.) (emphasis in original.)

This order in particular requested further briefing on the following issues pertaining specifically to the sufficiency of the evidence claim:

1.     Do the parties agree that the Court of Appeal never analyzed the underlying facts of sufficiency of the evidence *as to petitioner*, and if so, does this constitute a waiver of the sufficiency issue;

2.     Assuming question one is answered in the affirmative, what is the AEDPA standard of review for a waiver finding; that is, should it be analyzed as a type of procedural default or some type of merits ruling;

(ECF No. 16 at 2-3.) (emphasis in original).

Respondent answered question 1 in the negative, arguing that the state court, despite not specifically discussing the underlying facts of sufficiency of the evidence, did consider the merits

---

[4]  This latter ruling was correct as a matter of state law and federal law as well, at least where the issue on appeal is sufficiency of the evidence.  See Griffin v. United States, 502 U.S.46 (1991).

[5]  Without a finding of waiver, the Court of Appeal decision makes no sense.  It would be tantamount to finding: Petitioner challenges sufficiency of the evidence, but because he does not challenge sufficiency of the evidence, he loses.  This is the stuff of *Alice in Wonderland*.

1   of the claim.  Respondent pointed out that merely because a court of appeals issues a decision on

2   an issue without explanation or in some cases without addressing the claim, does not mean that

3   the claim was overlooked.  Respondent further argued that the evidence that petitioner was the

4   shooter was strong, and appellate counsel's decision to challenge the conviction on theories two

5   and three only was reasonable and did not constitute a waiver of this claim.  Petitioner's filed

6   statement in response to the court's further briefing order waived further argument in response to

7   these questions.

8        The undersigned disagrees with Respondent's underlying positions, but ultimately agrees

9   that petitioner cannot successfully challenge sufficiency of the evidence here.  The "merits" of an

10  insufficiency of the evidence claim concern a discussion of the elements of the crime with a

11  discussion of the facts which satisfy those elements, even if only minimally.  That did not happen

12  in the Court of Appeal opinion.  Rather, by not arguing that the evidence was insufficient on the

13  "shooter" theory, petitioner guaranteed that the Court of Appeal would not address the merits on

14  *any* of the theories of insufficiency.  In essence, petitioner's appellate counsel unreasonably

15  waived the argument, conceded it, or inadvertently abandoned it, however one desires to describe

16  it.  It is as if a litigant seeks to keep a piece of evidence from being admitted, evidence which may

17  be admitted on three independent bases, but the litigant challenges only two of them.  Why bother

18  objecting?[6]

19       But whatever label is attached to it, the failure to raise sufficiency of the evidence on all

20  theories of conviction on direct review bars petitioner from raising the issue in federal habeas.

21  The situation here is no different in principle than the waiver which occurs when one fails to raise

22  an issue at all on direct review, the so called <u>Dixon</u> bar in California, a default which was recently

23  upheld by the United States Supreme Court.  <u>Lee v. Johnson</u>, __U.S.__, 136 S.Ct. 1802 (2016).

24  <u>See</u> <u>also</u> <u>Coley v. Gonzales</u>, 55 F.3d 1385, 1387 (9th Cir. 1995).  *Cf* <u>Castille v. Peoples</u>, 489

25  _____

26  [6]  Thus, respondent's usual response to an ineffective assistance of counsel claim—"it was a
    matter of tactics" not to raise the shooter theory—makes no sense in the context of the

27  insufficiency issue.  Petitioner's appellate counsel, by failing to oppose the shooter theory thereby
    guaranteed that the entire insufficiency issue would never be reviewed on its merits.  Some

28  tactics.  More will be said about ineffective assistance of counsel in the second section.

1    U.S.346 (1989) (an issue raised in such a manner that the state appellate court will not reach the

2    merits has not exhausted the claim).  One who raises an issue so incompletely that the direct

3    review will not reach the merits, can claim no greater right to review on the merits in federal

4    habeas than one who does not raise the issue at all.

5            Petitioner seemingly proceeds herein by waving goodbye to this essentially procedural

6    waiver or abandonment determination by the Court of Appeal as if it meant nothing, and then

7    argues here the actual merits of insufficiency.  He desires this court to review his arguments *de*

8    *novo*.  This tactic cannot prevail here.  Again, using the objection to evidence analogue, if the

9    appellate court had ruled that critical evidence was permitted because of the failure to object, or

10   failure to oppose a ground for its admission, petitioner here would ignore that procedural finding

11   in federal habeas and proceed to argue for preclusion on its constitutional merits.  However, one

12   ignores a procedural waiver ruling at his or her peril.[7]

13           If respondent had simply responded to petitioner's merits arguments herein, on their

14   merits, as merits are defined above, and not relied on the Court of Appeal's express finding that

15   no merits analysis was necessary because petitioner had failed to properly oppose the

16   insufficiency grounds, there might well have been a "waiver of the waiver."  However,

17   respondent *did* rely in the main on the waiver finding by the Court of Appeal, and simply further

18   argued that the "shooter theory" had sufficient evidence in any event.  Although respondent may

19   have mislabeled its reliance on the Court of Appeal ruling as being "on the merits," and not a

20   default or waiver, respondent did raise the substance of the issue.  The undersigned will rely on

21   that substance.

22

23   [7] Of course, if the procedural ruling was successfully attacked in federal habeas, one could then
     argue the merits.  But petitioner does not attack the ruling, he just ignores it.  Perhaps that is
24   because the appellate court was correct on both state and federal grounds in terms of permitting
     non-unanimity on the theories underlying the ultimate determination of murder.  Under state law
25   and federal, Griffin v. United States, 502 U.S.46 (1991), the jury was not required to state or be
     unanimous as to which theory it chose to convict, and it was permitted to convict with sufficient
26   evidence to support any one of the alternative theories presented.  As such, the Court of Appeal
     was correct in finding that it did not matter whether the evidence was sufficient under theory two
27   or three, as it was concededly sufficient under theory one because petitioner did not appeal that
     theory.
28

1    The question then becomes, why not simply respond to the merits and debunk any claim

2    that there was insufficient evidence on the "shooter theory," or any of the other two theories.  The

3    undersigned has not done so because, for the reasons set forth in Appendix B, the sufficiency of

4    the evidence on that theory is not so clear cut. Nor is the sufficiency of the evidence on the other

5    theories so clear cut.  The undersigned will not hazard an alternative ruling on the merits, one

6    which the Court of Appeal was unwilling to issue, because the waiver or abandonment ruling is

7    unquestionably correct.

8        C.  Ineffective Assistance of Appellate Counsel

9    By now it is clear that petitioner understands he did not argue sufficiency of the evidence

10   in regard to the shooter theory on direct appeal, but barely asserts this failure was due to his

11   appellate counsel's ineffectiveness.

12   In the order for further briefing, the undersigned posed the following question pertaining

13   to ineffective assistance of appellate counsel:

14           3.     Within the course of a 28 page petition, in an introductory
         "notwithstanding" phrase in one sentence on page 20, petitioner
15       alludes to ineffective assistance of appellate counsel.  Does this
         constitute a fair raising of the ineffective assistance issue in this
16       habeas action, was this issue ever exhausted, and if so, does
         respondent waive any exhaustion requirement.  The latter question
17       in the preceding sentence requires a "yes," or "no" answer;
         "maybe," or "respondent reserves the right to argue exhaustion at a
18       later time," or the like, is an unacceptable answer.

19   (ECF No. 16 at 3.)

20   Petitioner waived any argument on further briefing; however, respondent stated its

21   position in response to this order that petitioner had not presented an ineffective assistance of

22   appellate counsel claim, and even if petitioner had presented such a claim, it would not be

23   exhausted and respondent does not waive the exhaustion requirement.

24   Therefore, the undersigned finds that this claim has not been properly raised in this

25   petition and is not exhausted in any event.  Neither the petition nor the traverse raises ineffective

26   assistance as a separate claim.  The only mention of this argument is found buried in the

27   insufficient evidence argument under the discussion of whether petitioner was the shooter.  (ECF

28   No. 2 at 25 (electronic pagination, p.20 in the brief).)  Petitioner raises ineffective assistance of

1   appellate counsel in one brief sentence in a paragraph arguing why the sufficiency of the evidence

2   theory in regard to whether he was the shooter was not raised on appeal. (Id.)  Petitioner again

3   mentions this reason in a sentence in his traverse.  (ECF No. 13 at 7.)  Although respondent

4   initially addressed this argument, respondent's filing in response to the order for further briefing

5   would now seem to indicate that respondent did so only out of an abundance of caution but had

6   no intention to concede that ineffective assistance was a separate claim.  In any event, even if

7   petitioner had properly raised ineffective assistance as a claim, it was not raised in the state courts

8   and is not exhausted.

9        The undersigned understands that in a lack of exhaustion setting, the court can reach the

10   merits *if* the claim will be denied on the merits.  28 U.S.C. § 2254 (b)(2).  However, that section

11   is discretionary, and the undersigned declines to reach out to the merits, in the absence of a state

12   determination on the merits, when the issues are close.  *Compare* the discussion on the merits of

13   the due process issue below (not close on the merits for that unexhausted issue).  For the reasons

14   set forth above, and including footnote 6, the issues on ineffective assistance of counsel are close.

15   By definition, appellate counsel had no legitimate, tactical reason for raising an issue whose

16   incompleteness doomed it to a procedural denial.  And, as the undersigned has expressed, the

17   issue of sufficiency of the evidence is colorable on all theories.[8]

18        In addition, the undersigned notes the practice of the state Attorney General to attempt to

19   keep the lack of exhaustion as a trump card.  The initial assertion of exhaustion in this Answer

20   was that exhaustion is required, and, in essence, a claim contained in the petition was exhausted

21   unless it was not.  The Attorney General made, and makes, no affirmative motion concerning

22   exhaustion.  This assertion in this Answer, and answers generally, is entirely vague and unhelpful,

23   especially because the law requires an *express waiver* of exhaustion by respondent for that waiver

24   to be effectual. 28 U.S.C. § 2254(b)(3).  Thus, if the merits determination were to be decided

25   adversely herein to respondent, the "exhaustion card" could then be played in the absence of an

26   express waiver undoing the adverse merits ruling.

27   _____

28   [8]  Petitioner has not requested a stay so that the issue may be exhausted, and then properly
     presented in a federal petition.

1    In close cases, the undersigned is unwilling to be a part of this exhaustion gambit.  Rather,

2    in close cases, the Attorney General will be asked to either move/waive on an exhaustion

3    assertion, or the undersigned will simply find the issue unexhausted (if it is) and dismiss on that

4    basis.  The undersigned will not issue, in effect, advisory rulings or recommendations on the

5    merits.

6    D.  Due Process Violation in Trial Court's Denial of Juror Information

7    Finally, to the extent petitioner raises an additional unexhausted claim, that the trial

8    court's denial of petitioner's motion to release juror identifying information for purposes of

9    interviewing them to clarify which theory they relied upon to reach their verdict, amounted to a

10   denial of his due process rights, this argument also fails.

11   Evidence concerning the mental processes by which a juror arrived at his/her verdict is

12   inadmissible to test the validity of that verdict.  See Tanner v. United States, 483 U.S. 107, 117,

13   127 (1987) ("[L]ong-recognized and very substantial concerns support the protection of jury

14   deliberations from intrusive inquiry.").  This rule is intended to protect the jury's deliberative

15   process by preventing challenges to a verdict based on arguments, statements, discussions, mental

16   and emotional reactions, votes, or methods used in reaching a verdict.  Fed. R. Evid. 606 advisory

17   committee's notes; In re U.S. Financial Securities Litigation, 609 F.2d 411, 430 n.68 (9th Cir.

18   1979).  The values sought to be promoted by Rule 606(b) include freedom of deliberation,

19   stability and finality of verdicts, and protection of jurors against annoyance and embarrassment.

20   Fed. R. Evid. 606 advisory committee's notes (citing McDonald v. Pless, 238 U.S. 264 (1915)).

21   Based on this well established authority, and the lack of any Supreme Court authority to

22   support petitioner's claim, no due process violation resulted from the trial court's denial of

23   petitioner's motion for release of juror information.  This claim should be denied.

24   III.  CONCLUSION

25   For all of the foregoing reasons, the petition should be denied.[9]  Pursuant to Rule 11 of the

26   _____

27   [9]  Generally, if an unexhausted issue is mixed with an exhausted issue, the petition is considered mixed and must be dismissed (without prejudice), not denied.  See Rose v. Lundy, 455 U.S. 509 (1982).  However, the undersigned does not consider ineffective assistance of appellate counsel to

28   have been properly raised in the federal petition as an issue, as well as it being unexhausted.

13

1   Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

2   appealability when it enters a final order adverse to the applicant.  A certificate of appealability

3   may issue only "if the applicant has made a substantial showing of the denial of a constitutional

4   right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations,

5   a substantial showing of the denial of a constitutional right has not been made in this case.

6           For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

7           1.  Petitioner's application for a writ of habeas corpus be denied; and

8           2.  The District Court decline to issue a certificate of appealability.

9           These findings and recommendations are submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within fourteen days after service of the objections.  Failure to file

15   objections within the specified time may waive the right to appeal the District Court's order.

16   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

17   Dated: June 20, 2016

18                                  /s/ Gregory G. Hollows

19                          UNITED STATES MAGISTRATE JUDGE

20

21

22   GGH:076/Gonz1961.hc

23

24

25

26

27

28   Therefore, the petition should not be considered mixed at this point.

14

1  *Appendix A*

2      AEDPA Standards

3      The statutory limitations of federal courts' power to issue habeas corpus relief for persons

4  in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

5  Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

6          An application for a writ of habeas corpus on behalf of a person in
           custody pursuant to the judgment of a State court shall not be
7          granted with respect to any claim that was adjudicated on the merits
           in State court proceedings unless the adjudication of the claim-
8

9          (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
10         determined by the Supreme Court of the United States; or

11         (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
12         State court proceeding.

13      For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

14  of the United States Supreme Court at the time of the last reasoned state court decision.

15  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) (citing Greene v. Fisher, ―― U.S. ――

16  –, ――――, 132 S.Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) (citing

17  Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct. 1495 (2000)).  Circuit precedent may not be

18  "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal

19  rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, ―― U.S. ――, ――,

20  133 S.Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ―― U.S. ――, ――, 132 S.Ct. 2148,

21  2155 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely

22  accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be

23  accepted as correct.  Id.

24      A state court decision is "contrary to" clearly established federal law if it applies a rule

25  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

26  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640, 123 S.Ct.

27  1848 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court

28  may grant the writ if the state court identifies the correct governing legal principle from the

1  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

2  case.[10]  Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003); Williams, 529 U.S. at 413;

3  Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004).  In this regard, a federal habeas court "may

4  not issue the writ simply because that court concludes in its independent judgment that the

5  relevant state-court decision applied clearly established federal law erroneously or incorrectly.

6  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro

7  v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933 (2007); Lockyer, 538 U.S. at 75 (it is "not

8  enough that a federal habeas court, in its independent review of the legal question, is left with a

9  'firm conviction' that the state court was 'erroneous.' ").  "A state court's determination that a

10  claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

11  the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct.

12  770 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004)).[11]

13  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

14  must show that the state court's ruling on the claim being presented in federal court was so

15  lacking in justification that there was an error well understood and comprehended in existing law

16  beyond any possibility for fairminded disagreement."  Harrington, 562 U.S. at 103.

17       The court looks to the last reasoned state court decision as the basis for the state court

18  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004).  If

19  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

20  previous state court decision, this court may consider both decisions to ascertain the reasoning of

---

21  [10]  The undersigned also finds that the same deference is paid to the factual determinations of

22  state courts.  Under § 2254(d)(2), a state court decision based on a factual determination is not to
be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

23  presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
384 F.3d 628, 638 (9th Cir.2004)).  It makes no sense to interpret "unreasonable" in § 2254(d)(2)

24  in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error
must be so apparent that "fairminded jurists" examining the same record could not abide by the

25  state court factual determination.  A petitioner must show clearly and convincingly that the

26  factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974
(2006).

27  [11]  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an
incorrect application of federal law.'"  Harrington, 562 U.S. at 101, citing Williams v. Taylor,

28  529 U.S. 362, 410, 120 S.Ct. 1495 (2000).

1   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc).

2   "[Section] 2254(d) does not require a state court to give reasons before its decision can be

3   deemed to have been 'adjudicated on the merits.'"  Harrington, 562 U.S. at 100.  Rather, "[w]hen

4   a federal claim has been presented to a state court and the state court has denied relief, it may be

5   presumed that the state court adjudicated the claim on the merits in the absence of any indication

6   or state-law procedural principles to the contrary."  Id. at 784-85.  This presumption may be

7   overcome by a showing "there is reason to think some other explanation for the state court's

8   decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct.

9   2590 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

10  but does not expressly address a federal claim, a federal habeas court must presume, subject to

11  rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, —— U.S. ——

12  –, ——, 133 S.Ct. 1088, 1091 (2013).

13          When it is clear, however, that a state court has not reached the merits of a petitioner's

14  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

15  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

16  F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

17          The state courts need not have cited to federal authority, or even have indicated awareness

18  of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362,

19  365 (2002).  Where the state court reaches a decision on the merits but provides no reasoning to

20  support its conclusion, a federal habeas court independently reviews the record to determine

21  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

22  Thompson, 336 F.3d 848, 853 (9th Cir.2003).  "Independent review of the record is not de novo

23  review of the constitutional issue, but rather, the only method by which we can determine whether

24  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

25  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

26  reasonable basis for the state court to deny relief."  Harrington, 562 U.S. at 98.

27  A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v.

28  Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.2012).  While the federal court cannot analyze just what

1  the state court did when it issued a summary denial, the federal court must review the state court

2  record to determine whether there was any "reasonable basis for the state court to deny relief."

3  Harrington, 562 U.S. at 98.  This court "must determine what arguments or theories ... could have

4  supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

5  could disagree that those arguments or theories are inconsistent with the holding in a prior

6  decision of [the Supreme] Court."  Id. at 786.  "Evaluating whether a rule application was

7  unreasonable requires considering the rule's specificity.  The more general the rule, the more

8  leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

9  stringency of this standard, which "stops short of imposing a complete bar of federal court

10  relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

11  cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

12  was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

13  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state

14  court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir.2013) (quoting Harrington,

15  562 U.S. at 98).

16       Standards for Insufficient Evidence

17       When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is

18  available if it is found that upon the record evidence adduced at trial, viewed in the light most

19  favorable to the prosecution, no rational trier of fact could have found "the essential elements of

20  the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.

21  278 (1979).  Jackson established a two-step inquiry for considering a challenge to a conviction

22  based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir.2010) (en

23  banc).  First, the court considers the evidence at trial in the light most favorable to the

24  prosecution.  Id., citing Jackson, 443 U.S. at 319, 99 S. Ct. 2781.  "'[W]hen faced with a record of

25  historical facts that supports conflicting inferences,' a reviewing court 'must presume-even if it

26  does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in

27  favor of the prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at

28  326, 99 S. Ct. 2781.

18

1    "Second, after viewing the evidence in the light most favorable to the prosecution, a

2    reviewing court must determine whether this evidence, so viewed is adequate to allow 'any

3    rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id.,

4    quoting Jackson, 443 U.S. at 319, 99 S. Ct. 2781.  "At this second step, we must reverse the

5    verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact

6    finders would have to conclude that the evidence of guilt fails to establish every element of the

7    crime beyond a reasonable doubt."  Id.

8           Put another way, "a reviewing court may set aside the jury's verdict on the ground of

9    insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v.

10   Smith, ___ U.S. ___, 132 S.Ct. 2, 4 (2011).  Sufficiency of the evidence claims in federal habeas

11   proceedings must be measured with reference to substantive elements of the criminal offense as

12   defined by state law.  Jackson, 443 U.S. at 324 n.16.

13          "Jackson leaves juries broad discretion in deciding what inferences to draw from the

14   evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic

15   facts to ultimate facts.'"  Coleman v. Johnson, ___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) (per

16   curiam) (citation omitted).  "'Circumstantial evidence and inferences drawn from it may be

17   sufficient to sustain a conviction.'"  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir.1995) (citation

18   omitted).

19          Superimposed on these already stringent insufficiency standards is the AEDPA

20   requirement that even if a federal court were to initially find on its own that no reasonable jury

21   should have arrived at its conclusion, the federal court must also determine that the state appellate

22   court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable

23   determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).  Because this claim is governed

24   by the AEDPA, this court owes a "double dose of deference" to the decision of the state court.

25   Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting Boyer v. Belleque, 659 F.3d 957,

26   960 (9th Cir. 2011).

27

28

1    *Appendix B*

2        California Penal Code § 187 states:  "(a) Murder is the unlawful killing of a human being,

3    or a fetus, with malice aforethought."  Malice is then defined as follows:

4           Such malice may be express or implied. It is express when there is
           manifested a deliberate intention unlawfully to take away the life of
5           a fellow creature. It is implied, when no considerable provocation
           appears, or when the circumstances attending the killing show an
6           abandoned and malignant heart.

7           When it is shown that the killing resulted from the intentional doing
           of an act with express or implied malice as defined above, no other
8           mental state need be shown to establish the mental state of malice
           aforethought. …
9

10   Cal. Penal Code § 188.  Implied malice exists "when a defendant is aware that he is engaging in

11   conduct that endangers the life of another."  People v. Cravens, 53 Cal.4th 500, 507 (2012).

12       Second degree murder, for which petitioner stands convicted after appeal, contains the

13   same elements as first degree murder, but without the additional elements of willfulness,

14   premeditation, and deliberation, which first degree murder requires.  People v. Sandoval, 62

15   Cal.4th 394, 424, 2015 WL 9449719 at *19 (Dec. 24, 2015).

16       In regard to the theory that he was the shooter, petitioner argues that not only was there

17   insufficient evidence, but the evidence presented established that he was *not* the shooter.

18   Petitioner sorts through the testimony of various witnesses, including that of the victim's wife,

19   Ms. Cardenas who, after testifying that she saw the shooter's face, did not identify petitioner as

20   the shooter.  (ECF. No. 2 at 22.)  Ms. Guiterrez testified that petitioner was not the shooter.  (Id.

21   at 24.)  Petitioner sets forth the testimony of various other witnesses who testified to facts that

22   would indicate petitioner was not the shooter.

23       Taking the shooter theory on its own merit, the evidence that petitioner was the shooter

24   was questionable.  Respondent cites to various portions of the transcript in support of the

25   statement that "multiple witnesses provided descriptions of the shooter that matched Jose."  (ECF

26   No. 11 at 24.)  In fact, the majority those portions of the transcript reflect either that Juan

27   Gonzalez was identified as the shooter (RT. 415), or that the witnesses could not positively

28   identify the shooter.  See RT. 410-16, 434, 468-69, 560-64.  For example, Cynthia Gutierrez, for

1   whom there was evidence she was petitioner's girlfriend, (RT. 1343; but see RT. 1391), testified

2   that after the gun fell, it was picked up by a guy she did not know, and she had known petitioner

3   since high school.  (RT. 811, 785.)  According to this witness, petitioner was not the shooter.

4   (RT. 812, 828, 831.)  The only possible witness who identified petitioner as the shooter was

5   Veronica Cardenas, who described the shooter as someone who resembled petitioner, (RT. 410-

6   13, 434), but then identified Juan, not Jose Gonzalez, in the courtroom as someone who looked

7   like the shooter.  (RT. 415.)

8        Celica Cardenas, wife of the victim, testified that she was not sure about the identity of the

9   gunman but thought Juan Gonzalez looked most like him.  (RT. 468-69, 1229-1230.)  She also

10  declined to pick petitioner out of a photo lineup, although she said at that time that a different

11  person looked similar to the shooter.  (RT. 1241.)  Therefore, respondent's citations to the record

12  tell only a small carefully selected part of the story.  In fact, the physical evidence in the form of

13  residue swabs taken from the getaway vehicle, indicated that no gunshot residue particles were

14  found on the front passenger side of the car, where petitioner had sat, but were only found on the

15  steering wheel, where Juan Gonzalez had been driving.  (RT. 967-68, 1078-1081.)

16

17

18

19

20

21

22

23

24

25

26

27

28